UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALBERTO QUIALA FERNANDEZ,<br><br>                         Petitioner,<br><br>        v.<br><br>BRUCE SCOTT,[1]<br><br>                         Respondent. | CASE NO. 2:26-cv-00043-LK<br><br>ORDER DENYING PETITION FOR HABEAS CORPUS |

This matter comes before the Court on Petitioner Alberto Quiala Fernandez's Petition for Writ of Habeas Corpus. Dkt. No. 4. For the reasons stated below, the Court denies the petition.[2]

---

[1] Quiala Fernandez lists "ICE Field Office Director" as the Respondent to this petition. Dkt. No. 4 at 1. The proper respondent is the warden of the facility at which he is located—i.e., the Northwest ICE Processing Center ("NWIPC"). *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Consistent with its obligation to construe pro se filings leniently, the Court substitutes NWIPC Warden Bruce Scott as the respondent in this matter. *See Buriev v. Warden, GEO, Broward Transitional Ctr.*, No. 25-CV-60459, 2025 WL 2763202, at *2 (S.D. Fla. Sept. 26, 2025); *Hutton v. Entzel*, No. CV 25-97-DLB, 2025 WL 3211546, at *1 n.1 (E.D. Ky. Oct. 22, 2025); *Gregory v. Macauley*, No. 22-13119, 2025 WL 424508, n.1 (E.D. Mich. Feb. 6, 2025). While Bruce Scott has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Padilla*, 542 U.S. at 435 (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) the federal government often represents the warden's interests, as it does in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained."). Indeed, the government's return does not raise this concern. *See* Dkt. No. 8.

[2] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition.

ORDER DENYING PETITION FOR HABEAS CORPUS - 1

## I.     BACKGROUND

Quiala Fernandez is a native and citizen of Cuba. Dkt. No. 9 at 1. In 2013, he applied for entry into the United States, and upon inspection by Department of Homeland Security ("DHS") officers, he was determined to be inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), issued a Notice to Appear ("NTA") "charging [him] for proceedings in the San Antonio, Texas, Immigration Court," and released on parole, which expired on February 19, 2015. *Id.* at 1–2; *see also* Dkt. No. 10-1.

In February 2025, Quiala Fernandez attempted to cross the border into Canada, but was denied entry and was returned to the United States. Dkt. No. 9 at 3. At that time, he was taken into DHS custody and transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE") at the NWIPC, where he is currently detained. *Id.*; *see also* Dkt. No. 4 at 1. In March 2025, the San Antionio Immigration Court transferred proceedings to the Tacoma Immigration Court. Dkt. No. 9 at 3.

In March 2025, ICE advised an immigration judge in Tacoma Immigration Court that Quiala Fernandez is a potential member of the *Franco-Gonzalez v. Holder* class action litigation. *Id.*[3] In April 2025, an attorney appeared for Quiala Fernandez in immigration court. Dkt. No. 9 at 4. In July 2025, Quiala Fernandez also filed an application for asylum, withholding of removal, and protection under the Convention Against Torture, as well as a second application to adjust his

*See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

[3] The *Franco-Gonzalez* class action litigation resulted in a permanent injunction requiring that the federal government provide "Qualified Representatives" to a class encompassing unrepresented individuals detained by DHS who were not mentally competent to represent themselves in detention or removal proceedings. *See Franco-Gonzales v. Napolitano*, No. CV-10-02211-DMG-DTBx, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) (certifying class); *Franco-Gonzalez v. Holder*, No. CV 10-02211-DMG-DTBx, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013) (granting permanent injunction); *Franco-Gonzalez v. Holder*, No. CV-10-02211-DMG-DTBx, 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014) (setting forth further details on permanent injunction including screening system and evaluation standards).

status based on the Cuban Adjustment Act. *Id.* In September 2025, an immigration judge conducted a bond hearing and denied bond, finding that ICE had established that Quiala Fernandez was a flight risk by clear and convincing evidence. *Id.*

On September 15, 2025, the merits hearing was conducted, and the judge reserved opinion for a written decision. *Id.* In October 2025, the immigration judge denied relief and ordered Quiala Fernandez deported to Cuba. *Id.*; Dkt. No. 10-9. Quiala Fernandez, still represented by his attorney, filed an appeal with the Board of Immigration Appeals. Dkt. No. 9 at 4. On January 4, 2026, Quiala Fernandez filed a pro se request with the BIA to "waive his opportunity to seek relief in removal proceedings and be removed to Cuba or be allowed to voluntarily depart." *Id.* at 5. The BIA construed this as a motion to withdraw his appeal. *Id.* On January 22, 2026, Quiala Fernandez "informed an ICE officer during a pod visit that he wanted to withdraw his BIA appeal." *Id.*

Meanwhile, Quiala Fernandez filed his pro se petition for habeas corpus with this Court on January 5, 2026. Dkt. No. 1. Quiala Fernandez requested an order requiring his release or a bond hearing. Dkt. No. 4 at 2. He contended that although his case "is not within the Zadvydas mold," due process still required a bond hearing because the length of his confinement has become "completely excessive[.]" *Id.* at 5–6 (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Respondent opposed the motion. *See* Dkt. No. 8.

On February 11, 2026, Respondent filed a supplemental brief stating that earlier that day, the BIA granted Quiala Fernandez's motion to withdraw his appeal, so his "detention authority has shifted from 8 U.S.C. § 1225(b) to 8 U.S.C. § 1231(a)(2) as of today." Dkt. No. 11 at 1; *see also* Dkt. No. 12-1 at 2–5 (the BIA's decision and notification of the same to Quiala Fernandez and his immigration counsel). According to Respondent, Quiala Fernandez's removal order "is final and the removal period has begun"; thus, "Petitioner's detention is mandatory." Dkt. No. 11 at 2 (citing 8 U.S.C. §§ 1231(a)(1)(B)(i), -(a)(2). In light of these changed circumstances and

ORDER DENYING PETITION FOR HABEAS CORPUS - 3

Respondent's supplemental filings, the Court allowed Quiala Fernandez to file a reply to those documents and in further support of his habeas petition by February 25, 2026. *See* Dkt. No. 13. Quiala Fernandez filed a reply on February 11 arguing that his detention is unlawful under *Zadvydas*, Dkt. No. 14, but he did not file a supplemental reply.

## II.    DISCUSSION

### A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation

ORDER DENYING PETITION FOR HABEAS CORPUS - 4

proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

Section 1231 of the INA governs the detention, release, and removal of noncitizens who have been ordered removed. Detention during the "removal period" is mandatory. 8 U.S.C. § 1231(a)(2). The removal period lasts 90 days and begins to run on the latest of the following: (1) the date the order of removal becomes final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal of the non-citizen, the date of the court's final order; or (3) if the noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement. *Id.* § 1231(a)(1)(B). Although there is no statutory limit on the Secretary's discretion to detain noncitizens beyond the 90-day period, the Supreme Court held that the "presumptively reasonable" period for detention following a removal order is six months. *Zadvydas*, 533 U.S. at 701.

**B.    Quiala Fernandez is Subject to Mandatory Detention**

Quiala Fernandez's removal period began on February 11, 2026, the day that the BIA granted his motion to withdraw his appeal and his removal order became final. 8 U.S.C. § 1231(a)(1)(B)(i). Accordingly, Quiala Fernandez's detention is mandatory. 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the [noncitizen]."); *see also Khotesouvan v. Morones*, 386 F.3d 1298, 1299–300 (9th Cir. 2004) ("Congress has mandated the detention of an alien ordered removed for 90 days"); *Arango Marquez v. I.N.S.*, 346 F.3d 892, 898 (9th Cir. 2003) ("Detention during the removal period is mandatory.") (citing 8 U.S.C. § 1231(a)(2)). Furthermore, the 90-day period of mandatory detention under 8 U.S.C. § 1231(a)(2) has been found to "pass[ ] constitutional scrutiny." *Khotesouvan*, 386 F.3d at 1301.

Although the petition contends that Quiala Fernandez is being detained unlawfully under section 1226(a), Dkt. No. 4 at 3–4, he is now detained under Section 1231(a)(2), Dkt. No. 11 at 1–

ORDER DENYING PETITION FOR HABEAS CORPUS - 5

2. Because the basis for Quiala Fernandez's detention has changed since he filed his petition, his claims of wrongful detention under Section 1226(a) are now moot. *See, e.g.*, *Zakarneh v. United States Immigr. & Customs Enf't*, 2:25-cv-00707-DGE, 2026 WL 73825, at *4 (W.D. Wash. Jan. 9, 2026) ("To the extent Petitioner challenges his pre-final removal order detention, such a claim is moot" because the basis for his detention changed when the order of removal became final); *Inamzhon v. Warden of Golden State Annex*, No. 1:25-cv-01059-SKO (HC), 2025 WL 3080525, at *2–3 (E.D. Cal. Nov. 3, 2025) (finding claims moot when the basis for detention changed).

Moreover, Quiala Fernandez's claim under *Zadvydas* is premature. After the removal period ends, ICE may continue to detain noncitizens under Section 1231(a)(6) for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. At this point, while he is still in the removal period, Quiala Fernandez is not detained under Section 1231(a)(6) or entitled to relief under *Zadvydas*.

Finally, in his reply brief, Quiala Fernandez requests that the Court order the government "[n]ot to remove [him] to a third country in a unconstitutionally, punitive manner, and provide [him] with a notice and an opportunity to respond to any third country removal attempt in a re-opened removal proceeding[.]" Dkt. No. 14 at 1. Quiala Fernandez did not include this request in his petition, *see generally* Dkt. No. 4, and the Court does not entertain this new request for relief in his reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Dao v. Bondi*, No. 2:25-cv-02340-LK, 2026 WL 18626, at *4 n.2 (W.D. Wash. Jan. 2, 2026) (declining to consider the petitioner's new request for relief in his reply brief). The Court further notes that Quiala Fernandez does not indicate that anyone with the federal government has informed him that the government intends to deport him to a third country. *See generally* Dkt. No. 14.

Accordingly, the Court denies the habeas petition. If Quiala Fernandez is not removed within the 90-day removal period, and continued detention under § 1231(a)(6) becomes unreasonably prolonged and indefinite, Quiala Fernandez may file another habeas petition at that time. Now, though, he is not entitled to habeas relief.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Quiala Fernandez's petition.

Dated this 4th day of March, 2026.

Lauren King
United States District Judge

ORDER DENYING PETITION FOR HABEAS CORPUS - 7